In the Interest of N.N., A.N., M.N., D.N., A.N., and A.N., Minor Children,

**T.N., Mother, Appellant,**

**R.N., Father, Appellant.**

No. 04–1601.

Court of Appeals of Iowa.

Dec. 22, 2004.

Lori Ubbinga, Sioux City, for appellant-mother.

1. A deprived child is statutorily defined as a child who

 [i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian.

 N.D. Cent.Code § 27–20–02(8)(a) (2003); *see also, In re T.F.*, 681 N.W.2d 786, 790 (N.D. 2004).

Jane White of Parrish, Kruidenier, Moss, Dunn, Boles, Gribble & Cook, Des Moines, for appellant-father.

Thomas J. Miller, Attorney General, Tabitha Gardner, Assistant Attorney General, Thomas S. Mullin, County Attorney, and Dewey Sloan, Assistant County Attorney, for appellee-State.

Michelle Dreibelbis of the Juvenile Law Center, Sioux City, for children.

Considered by VOGEL, P.J., and MILLER and EISENHAUER, JJ.

VOGEL, P.J.

Richard and Tasjima separately appeal the juvenile court's September 24, 2004 order terminating their parental rights to their six children, Noreann, born in May of 2003, Ashley, born in August of 2001, Matthew, born in October of 1999, David, born in September of 1997, Adam born in May of 1996, and Anastacia, born in December of 1992. We affirm.

## I. Background Facts and Proceedings

Prior to the instant case, Richard, Tasjima and their children had been living a nomadic lifestyle and had been involved for some time with protective services in Minnesota and North Dakota where the family was offered numerous services in an effort to improve their situation. On July 7, 2003, the children were adjudicated "Deprived Children [1]" in North Dakota. Ultimately, North Dakota felt the children needed to be removed from the care of

their mother and father and set a hearing on the matter for December 10, 2003.

On November 27, Richard and Tasjima absconded with their children to Iowa to avoid this hearing. On December 8, Child Protective Services in Iowa received allegations that Richard, Tasjima and their six children were living in a recreational vehicle on a Sioux City, Iowa, truck stop parking lot. On December 9, the Juvenile Court for Woodbury County, Iowa issued a temporary removal order and the children were removed from the custody of Richard and Tasjima on December 17, 2003.[2] The children have remained in out-of-home placements since their removal.

On May 11, 2004 following a contested combined "removal/adjudicatory/dispositional/visitation hearing" the court filed an order adjudicating each of the six children as a child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(b) (2003) (parent has physically abused or neglected child) and (c) (child is likely to suffer harm due to parent's failure to exercise care in supervising child). This order continued custody of the children with the Iowa Department of Human Services (DHS) for placement in family foster care and left parental visitation in the discretion of the DHS. The order also directed that Richard and Tasjima be provided a variety of services.

On May 17, supervised visitation was suspended due to concerns over the way Richard and Tasjima conducted themselves during visitation.[3] The decision to suspend visitation was approved by the juvenile court following a June 24 visitation hearing. Thus, Richard and Tasjima have had no contact with the children since May 17, 2004. The only service that the parents participated in prior to the termination of their parental rights other than supervised visitation and psycho-social evaluations was Richard's limited involvement in an anger management course.

On September 24, 2004, the juvenile court filed an order terminating Richard and Tasjima's parental rights pursuant to Iowa Code section 232.116(1)(d) (child CINA for physical or sexual abuse, circumstances continue despite receipt of services), (e) (child CINA, child removed for six months, parent has not maintained significant and meaningful contact with the child), and "as it pertains to Ashley and Noreann only" (h) (child is 3 or younger, child CINA, removed from home for 6 of last 12 months, and child cannot be returned home).

 As an initial procedural matter, we note that Richard and the State agree that Iowa Code section 232.116(1)(h) does not apply to Ashley as she was older than three years of age at the time of the termination hearing. While we agree that Ashley was beyond her third birthday at the time of the hearing, we also note that Ashley was less than four years of age. The Iowa Code does not expressly state

---

**2.** On December 10, a hearing was convened in North Dakota Juvenile Court whereby custody of the six children was awarded to the Dunn County Social Services Department in the State of North Dakota. However, the North Dakota Juvenile Court dismissed the proceedings involving Richard, Tasjima, and the children upon receiving information from Iowa that the children had been taken into protective custody in this state.

**3.** Notwithstanding efforts by service providers to redirect the parents' behavior, Tasjima would blame Anastacia for having visitations split up while Richard would call the provider "f* *kin stupid" in front of the children and would advise the children to call their attorney about all the "lies" in the providers' reports. These chaotic visits caused the children to revert to uncontrolled behaviors such as spitting, kicking, hitting, throwing things, and climbing on cabinets.

whether section 232.116(1)(h) applies to children who are past their third birthday but who have not yet reached age four. However, by looking to another subsection of Section 232.116(1) we can easily determine that it does. Section 232.116(1)(f) relates to a child "four years of age or older." If section 232.116(1)(h) did not apply to children between the ages of three and four, the statutory grounds for termination of parental rights under sections 232.116(1)(f) and (h) would apply to all identified children except those between ages three and four. We will not attribute such an illogical intent to the legislature. *See* Iowa Code § 4.4(3) (presuming that in enacting a statute a just and reasonable result is intended); *Baldwin v. City of Waterloo*, 372 N.W.2d 486, 493 (Iowa 1985) (declining to interpret a statute in a manner that "would make no sense"). We, therefore reject the notion that this code section does not apply to Ashley.

## II. Standard of Review

Termination orders are reviewed de novo. *See In re M.M.S.*, 502 N.W.2d 4, 5 (Iowa 1993). We give weight to the juvenile court's findings of fact, but are not bound by its determinations. *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). The State must prove the grounds for termination by clear and convincing evidence. *In re E.K.*, 568 N.W.2d 829, 831 (Iowa Ct.App.1997). The primary interest in termination proceedings is the best interest of the children. *Id.*

## III. Issues

### A. *Hearsay*

Richard raises five contentions for our review on appeal. Among these five issues is Richard's contention that the trial court admitted exhibits that were "irrelevant and based on hearsay." Because this contention affects the integrity of the termination proceedings and thus all other issues presented, we, as a preliminary matter, address it. In doing so, we review evidentiary rulings for an abuse of discretion. *In re E.H.*, 578 N.W.2d 243, 245–46 (Iowa 1998).

Iowa Code section 232.96(6) allows the admission of a report, study, record, or other writing made by the DHS, a juvenile court officer, or a peace officer, notwithstanding any objection to hearsay statements contained within, if it is relevant and not unduly prejudicial. *See* Iowa Code § 232.96(6).; *In re A.J.*, 553 N.W.2d 909, 916 (Iowa Ct.App.1996) (determining the district court did not err in admitting reports compiled by a social worker, in testifying at a termination hearing, as "such reports have previously been held to be admissible over hearsay objections."). This hearsay exception applies to termination of parental rights proceedings under Iowa Code chapter 232. *In re E.J.R.*, 400 N.W.2d 531, 532–33 (Iowa 1987) (holding that "evidence admissible in chapter 600A terminations by virtue of section 232.96(6) shall likewise be admissible in terminations brought in accordance with chapter 232....").

Our review reveals that the exhibits in question, consisting primarily of police reports, pertain to the living conditions of the family, domestic abuse occurring within the family, and the efforts made to remove the children pursuant to the December 9, 2003 removal order. Thus, as they relate to the safety and welfare of the children they are relevant to the termination proceedings. Moreover the threat of prejudice they pose to Richard is low as they are cumulative of other evidence in the record. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) (noting that even if hearsay was inadmissible, no prejudice will be found if evidence was merely

cumulative). Accordingly, we find no abuse of discretion in their admission.

### B. Reasonable Efforts and Services Offered

 The first argument made by Richard implicating one of the statutory grounds for termination is that the juvenile court erred in terminating his parental rights under Iowa Code section 232.116(1)(d) because, subsequent to the CINA adjudication, the State did not offer him services to correct the circumstances that led to his children being adjudicated CINA. Tasjima raises only one issue on appeal, which relates to Richard's contention, as Tasjima avers that the State "did not provide reasonable efforts to reunify [her] with her children." *See In re C.B.,* 611 N.W.2d 489, 492 (Iowa 2000) (noting that a parent who only challenges on appeal the "reasonableness of the efforts of the DHS to achieve reunification of parent and child" and not the basis for removal has "clearly implicated those elements of the grounds for termination dealing with the evidence to show the child cannot be returned home because the parent has not improved enough to justify reunification."). A juvenile court's order terminating parental rights will be upheld if only one ground for termination is established by clear and convincing evidence. *See In Interest of Voeltz,* 271 N.W.2d 719, 723 (Iowa 1978) (noting that "[i]f one of these grounds is established by clear and convincing evidence the termination will be upheld."); *In re R.R.K.,* 544 N.W.2d 274, 276 (Iowa Ct. App.1995). Because we find the issue of whether the DHS made reasonable efforts to offer services subsequent to the CINA adjudication, to correct the circumstances which originally led to the adjudication dispositive as to both parents, we will not

4. Iowa Code section 232.102(12) provides for waiver of reasonable efforts upon written

address Richard's other arguments under Iowa Code section 232.116(1).

The concept of reasonable efforts is an outcropping of policies and laws governing the welfare of children which have generally been developed at the federal level. *C.B.,* 611 N.W.2d at 493. Congress conceived reasonable efforts "in part to ensure that prior to the expenditure of federal funds on foster care, reasonable efforts would be made to prevent out-of-home placement, and reasonable efforts would be made for unification following out-of-home placement." *Id.* (citation omitted). Iowa's scheme of reasonable efforts, unless waived [4], covers both the efforts to prevent the need for removal and the services necessary to implement reunification efforts. *Id.; see also,* Iowa Code § 232.102(10).

As stated by our state supreme court,

The reasonable efforts requirement is not viewed as a strict substantive requirement of termination. *Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require unification efforts.* The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent.

*C.B.,* 611 N.W.2d at 493 (emphasis added) (citations omitted).

Iowa Code section 232.102(10) defines reasonable efforts as,

the efforts made to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home.

findings of fact indicating the existence of aggravated circumstances.

Iowa Code section 232.116(1)(d)(2) provides that in order to terminate parental rights a juvenile court must find that

> Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

With regard to the efforts made to preserve the family and to provide services to remedy the circumstances leading to the adjudication, the juvenile court found that

> Richard and Tasjima have been offered/provided a myriad of services in three different States to stabilize their chaotic/nomadic lifestyle, to address their mental health issues, to address the ongoing domestic violence, and to improve their parenting skills. Since the intervention of this court and the Department of Human Services in December 2003, Richard and Tasjima have remained resistive toward services to the point of not even advising the Department of Human Services where they are living, they remain argumentative, they remain noncompliant, and they remain unable to identify the apparent family needs and deficits in their parenting abilities.

The juvenile court then concluded that the evidence clearly and convincingly supported termination of Richard's and Tasjima's parental rights under Iowa Code section 232.116(1)(d). In so doing the juvenile court found:

> Subsequent to this adjudication, Tasjima and Richard were offered or received services to correct the circumstances which led to the adjudication and these circumstances continue to exist despite the offer or receipt of services. While the parents argue that they were only provided with reunification services for the five months between the removal of the children and filing of the Petition for Termination of Parental Rights, the record reflects that these parents have received services in two other States over a number of years and that the children would continue to be put into harms way if returned to their parents. . . .

Upon our de novo review, we agree with the juvenile court's findings as they were supported by clear and convincing evidence in the record.

For instance, our review of the record reveals that an April 3, 2003 and a November 17, 2003 letter from Dunn County Social Services to the Dunn County States Attorney, as well as a December 8, 2003, letter from Dunn County Social Services to the Iowa DHS detail an extensive list of services provided to Richard in Tasjima by the State of North Dakota. These letters further indicate that North Dakota offered these services to "prevent or eliminate the need to remove the children from their home." Furthermore, the DHS Iowa Case Permanency Plans for Richard's and Tasjima's family indicate that services were provided in Minnesota and North Dakota from 1996–2003.

Additionally, the record supports a finding that Iowa offered and provided services intended to further the initial permanency goal of the DHS contained in the DHS case permanency plans, which was to return the children to their home. These services included parenting skill development, supervised visitation, psychosocial evaluations, sexual assault and domestic violence counseling for Tasjima, anger management counseling for Richard, and marriage counseling for both parents. We therefore conclude that the scope of the DHS's efforts clearly and convincingly demonstrates that it offered services to correct the circumstance which led to the CINA adjudication. *See In re A.Y.H.*, 508

N.W.2d 92, 95 (determining that clear and convincing evidence supported a finding that the DHS made reasonable efforts to reunify a family where the DHS had established a case plan for mother and her family, identified problems within family unit, provided services to mother, and conducted supervised visits between father and child). Consequently, as neither parent argues that the circumstances leading to termination no longer exist, and as none of the other requirements of Iowa Code section 232.116(1)(d) are in controversy, we conclude the district court correctly terminated both Richard's and Tasjima's parental rights under Iowa Code section 232.116(1)(d).

**AFFIRMED.**