**IN THE COURT OF APPEALS OF IOWA**

No. 15-0076
Filed September 10, 2015

**IN THE INTEREST OF A.E. AND D.E.,**
**Minor Children,**

**A.E., Father,**
**Appellant,**

**D.C., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle, District Associate Judge.

The mother and father separately appeal the termination of their parental rights to their children, A.E. and D.E. **AFFIRMED ON BOTH APPEALS.**

Derek Johnson of Johnson & Bonzer, P.L.C., Fort Dodge, for appellant father.

Darren Driscoll of Johnson, Kramer, Good, Mulholland, Cochrane & Driscoll, P.L.C., Fort Dodge, for appellant mother.

Thomas J. Miller, Attorney General, Janet Hoffman, Assistant Attorney General, Jennifer Benson, County Attorney, and Jordan Brackey, Assistant County Attorney, for appellee State.

Kurt Pittner, Fort Dodge, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, J.**

The mother and father separately appeal the juvenile court's termination of their parental rights to their children, A.E. and D.E. They both assert the State failed to prove by clear and convincing evidence their rights should be terminated pursuant to Iowa Code section 232.116(1)(e), (f), and (h) (2013). They further assert termination is not in the children's best interests because they share a bond with the children and, furthermore, that they should have been granted an additional six months to work towards reunification. The father also claims the court erred in admitting the report of a psychiatrist because a proper foundation was not laid. We conclude the juvenile court properly terminated both parents' rights under paragraphs (f) and (h), that termination is in the children's best interests, and the parent-child bond is not an impediment to termination. Moreover, granting the parents an additional six months would not correct the situation; furthermore, the father did not preserve error with regard to his evidentiary claim. Consequently, we affirm the order of the juvenile court terminating the parental rights of the mother and father to their children.

**I. Factual and Procedural Background**

A.E., born February 2010, and D.E., born January 2011,[1] came to the attention of the Iowa Department of Human Services (DHS) due to an incident of domestic violence. The mother has an older child, J.M., born May 2000, who is

---

[1] D.E. was born testing positive for marijuana in his system.

fathered by another man.[2] On June 24, 2013, the father assaulted the mother, D.E., and J.M. The juvenile court's recitation of the event is as follows:

> On June 24, 2013, law enforcement was called by a neighbor reporting that [the father] chased [the mother] down the street, pulled her back into the family's home and physically assaulted [D.E.] and [J.M.]. During the altercation, [J.M.] texted [the father's] father, [M.E], that [the father] was assaulting [the mother]. When [the father] discovered that [J.M.] had texted [M.E.] [the father] wrapped his arm around [J.M.'s] neck and choked him. [J.M.] suffered bruising and abrasions to his neck and a rug burn to his knee and complained of jaw pain. After law enforcement arrived, [the mother] denied that [the father] assaulted her, the children or [J.M.] and was not willing to speak with law enforcement. [J.M.] reported to law enforcement that [the father] chased [the mother] down the street and told her he would hurt one of the children if she did not return to the family home. [The father] reportedly grabbed [D.E.], then age two years, by the back of the neck and threw him into the house. [D.E.] had multiple scratches on his neck. [J.M.] reported that he could see [the father] yelling at [the mother], spitting in her face and hitting her. [The mother] took [J.M.] aside and talked with him in private away from law enforcement. [J.M.] then approached an officer, crying, and said everything he had reported was a lie. [J.M.] and [M.E.] later confirmed that [the mother] had told [J.M.] to lie.

The father was arrested and charged with two counts of child endangerment causing bodily injury, and a no-contact order was entered in favor of D.E. and J.M. The children were removed from the home and placed in foster care, where they remained at the time of the termination hearing.[3] A.E., D.E.,—as well as J.M.—were adjudicated in need of assistance (CINA) on January 29, 2014. All children stated to various adults that they witnessed or were the subject of physical abuse by the father.

---

[2] The mother and J.M.'s father share physical custody. J.M. is not a subject of the current termination proceedings.

[3] There were two foster home placements. The first placement was unable to handle the children's behavioral issues. They were then moved to their current foster home, where the parents have indicated they wish to adopt the children if parental rights are terminated.

The father pled guilty to the two counts of child endangerment and was sentenced to two years on each count, with the term of incarceration suspended. He was ordered to enter a residential correctional facility but later escaped, and in January 2014, he was charged with disorderly conduct and escape from a residential facility; he was then moved to another residential facility, and he resided there from March until the end of August, 2014.[4] The father's prior convictions include several assault charges, harassment, probation violations, criminal mischief, theft, interference with official acts, disorderly conduct, and driving under the influence, among others; several of these offenses were felonies. These convictions spanned from 2002 until 2014. According to the district court, the mother's criminal history includes convictions for domestic abuse assault, theft, possession of drug paraphernalia, interference with official acts, as well as driving-related offenses.

The June 2013 removal was the second time the children were removed from the parents' care. The previous incident was in March 2011, and also involved allegations of domestic violence and drug use. Following the children's removal, the mother tested positive for methamphetamine and marijuana, and the father was positive for methamphetamine. While they were initially uncooperative with services, eventually the parents received treatment for their substance abuse and mental health issues, and the children were returned to their care on February 10, 2012. The underlying CINA case was closed in March 2013.

---

[4] Following his stay in the residential facility, the DHS worker noted: "[T]here was a noticeable difference in [the father's] demeanor and behavior. His attitude was much improved and he was very reasonable."

Following the children's June 2013 removal, the parents were uncooperative with services until approximately three months before the termination hearing. The mother cancelled several family team meetings, and the parents only attended approximately three meetings throughout the pendency of these proceedings. They also failed to attend consistently the supervised visitation, and the DHS worker noted they appeared to be under the influence of narcotics during several visits, displaying twitching, sweating, slurred words, lack of coordination, sores, scabs, and an unkempt appearance. Additionally, the DHS worker had concerns regarding the parenting of the children during visitation, specifically with regard to the inappropriate discipline of the children. The children have demonstrated maladaptive behaviors—including self-harm, outbursts, and other behavioral issues—that grew worse after visits with the parents, though these behaviors have reduced since the children have been out of the parents' care.

The parents also failed to attend many appointments for the court-requested drug screenings and did not submit samples for testing until September 27, 2014; while the mother attended appointments during May 2014, she was a no-show for the rest of the scheduled testing. All drug screenings that were submitted by the mother were negative for narcotics, though the September 27, 2013 test of the father returned positive for methamphetamine. The parents maintain they have been drug-free since 2011. The mother attended substance abuse treatment from May until July, 2014, and the father underwent treatment while in the residential treatment facility. The father also received mental health treatment there.

As of the time of the termination hearing, the mother and father had been in a relationship for six years. During the pendency of these proceedings, the parents had a third child together, born September 2014. He is residing with the parents, and as of the termination hearing, he had not been the subject of removal proceedings.

The following services were provided to the family during the pendency of these proceedings: gamily team meetings; drug testing; foster care; supervised visitation; transportation; parenting skills; family safety, risk, and permanency (FSRP) services; parenting assessments; substance abuse evaluations; mental health evaluations; behavioral assessments for the children; child well-being assessments; therapy for the children; behavioral health intervention services; and medication management.

The State filed a petition to terminate the mother's and father's parental rights, and a contested hearing was held on October 1, 15, and 17, 2014, in which the parents testified. The State introduced as one of its exhibits a DHS report that had, as one of its attachments, the child-emotional-well-being assessment performed by Resmiye Oral, M.D., to which the father objected on hearsay grounds. On December 31, 2014, the juvenile court ordered the termination of the parental rights of the mother and the father pursuant to Iowa Code section 232.116(1)(e) as to both children, paragraph (f) as to A.E., and paragraph (h) as to D.E. The mother and father appeal.

**II. Standard of Review**

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear

and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we only need to find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.* To the extent we are reviewing evidentiary claims, our review is for an abuse of discretion. *In re N.N.*, 692 N.W.2d 51, 54 (Iowa Ct. App. 2004).

## III. Termination

The parents both assert the juvenile court erred in terminating their rights because the children could be returned home. Each argues evidence of drug use or violence has not been present in the home since January 2014, and that the evidence of previous violence was not credible; additionally, their third child is residing with them and is not the subject of removal proceedings. They further state they have regularly attended visits and have cooperated with all DHS requirements.

To terminate parental rights pursuant to Iowa Code section 232.116(1)(h), the State must establish the child is three years old or younger, adjudicated CINA, removed from the home for six of the last twelve months, and cannot be returned home at the present time. Iowa Code § 232.116(1)(h)(1)–(4). To terminate rights under paragraph (f), the child must be four years of age or older, adjudicated CINA, removed from the physical custody of the parents for at least twelve of the last eighteen months or for the last twelve consecutive months, and there is clear and convincing evidence that at the present time the child cannot be returned to the custody of the parents. *Id.* § 232.116(1)(f)(1)–(4).

The record establishes the juvenile court properly concluded A.E. and D.E. cannot be returned to the parents' care, as defined in paragraphs (f) and (h), respectively. Neither parent has shown much progress since their most recent involvement with DHS in June 2013. As the juvenile court noted, the parents:

> [D]id not attempt to meet any of their case plan goals or appear motivated to cooperate with services until termination of their parental rights was recommended, despite completion of the parenting assessments, mental health evaluations and substance abuse evaluations. [The mother] did not make any progress from the removal of the children in June 2013 until late April 2014, when she began substance abuse treatment and drug testing (even though she claimed sobriety for three years). [The mother] began mental health therapy with Lincoln Mental Health in July 2014. She attended four appointments before moving to Marshalltown.
>
> [The father] was able to obtain sobriety when he was sentenced to the residential correctional facility in January 2014. He was released from the residential correctional facility on August 27, 2014. He and [the mother] reside in Marshalltown, Iowa, with their new baby, born [in September] 2014. [The father] has been more cooperative over the past few months, attends visits once each week and is now on medication for mental health. He has not engaged in any substance abuse treatment, domestic violence counseling, anger management or batterer's education class. His parenting skills during visits have only marginally improved.

We agree with the court that neither parent has made progress to the point where the children can be returned to either parent's care. Both parents show a disturbing lack of awareness with regard to the danger the father poses to the children—each deny that physical abuse of the mother and children occurred, and they continue to assert that J.M. was lying about the abuse he suffered or witnessed. They also deny drug use in the home since 2011, though both have missed the majority of the drug screenings requested by DHS. The professionals who evaluated the children, including Dr. Oral and the case workers, noted that, without an acknowledgment of the domestic abuse and

substance abuse issues, the parents could not adequately or safely parent the children. The record supports this assessment, particularly given the father's continued domestic abuse and the mother's denial that the abuse occurs.

In determining the future actions of the parent, their past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). The mother and father both deny any harm to the children resulted from the father's perpetration of domestic violence. This is contrary to the well-being of the children, who would be subject to imminent harm—either physical abuse or drug use in the home—if returned to the care of the parents. The children demonstrated significant behavioral problems upon removal, and only after they were separated from the parents has there been an improvement in the children's behavior. It is also a testament to the parents' inadequate parenting skills that both refused to engage in services until shortly before the time of the termination hearing. Therefore, we agree with the juvenile court the children cannot be returned home at the present time, and the State satisfied its burden showing both parents' rights should be terminated under Iowa Code section 232.116(1)(f), as to A.E., and paragraph (h), as to D.E.

**IV. Best Interests and Additional Time**

The parents also argue termination is not in the children's best interests. They rely on the parent-child bond, and the father asserts the children should not be separated from their sibling. They argue the considerations of Iowa Code sections 232.111(2)(b)[5] and 232.116(3)(a), preclude termination. They further

---

[5] Iowa Code section 232.111 pertains to the filing of the petition rather than grounds to be proved.

assert the juvenile court improperly declined to grant them an additional six months to work towards reunification.

With respect to the parent-child bond consideration under 232.116(3)(a), we agree with the juvenile court any bond is not enough to render termination of parental rights not in the children's best interests. Both children have exhibited maladaptive behaviors indicating the parents have exposed the children to violence in the home with an overlay of drug use. Additionally, neither parent has progressed beyond fully-supervised visitation, and the DHS workers were concerned with behaviors exhibited by the parents during visits. While we agree that it is important for A.E. and D.E. to have a relationship with their full sibling, it is not enough to preclude the termination of parental rights.

Moreover, we do not agree with either parent's assertion more time would correct the situation. They have been involved with services since 2011, and yet, substance abuse and physical violence continue to occur while the children are present. Dr. Oral reported, and the DHS worker agreed, that the parents would need an additional two years of services before the children could be returned to the parents' care. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). The parents have had ample time to address their issues, and an additional six months would not remedy the situation; consequently, we agree with the juvenile court it is in the children's best interests the parental rights of the mother and father be terminated. *See* Iowa Code § 232.116(2).

**V. Expert Testimony**

The father's final argument claims the juvenile court erred in admitting Dr. Oral's report. He asserts the report was not authenticated, because Dr. Oral did not testify, nor did the FSRP worker state she saw Dr. Oral sign the report. The father asserts this is contrary to the mandates set forth in *Rumley v. Mason City*, 320 N.W.2d 648, 651 (Iowa Ct. App. 1982).

The father did not preserve error on this argument. Though he objected to the admission of the report on hearsay grounds, he does not present that argument on appeal; moreover, the foundational issue he does raise was not presented with respect to Dr. Oral's report, and the juvenile court did not address this specific claim. Consequently, error was not preserved, and we decline to address the merits of the father's foundation argument. *See Lamasters v. State*, 821 N.W.2d 862, 864 (Iowa 2012).

For the foregoing reasons, we affirm the juvenile court's termination of the mother's and father's parental rights to their children, A.E. and D.E.

**AFFIRMED ON BOTH APPEALS.**