# IN THE COURT OF APPEALS OF IOWA

No. 15-1912
Filed March 9, 2016

**IN THE INTEREST OF S.C.,**
**Minor Child,**

**A.C., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Wapello County, William S. Owens, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to her three-year-old daughter. **AFFIRMED.**

Mary Krafka of Krafka Law Office, Ottumwa, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd and Janet Hoffman, Assistant Attorneys General, for appellee State.

Samuel Erhardt of Erhardt & Erhardt, Ottumwa, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

A twenty-four-year-old mother challenges the juvenile court order terminating her parental rights to her three-year-old daughter, S.C. The mother acknowledges her struggles with addiction, but points to her participation in court-ordered services to prepare for S.C.'s return and to the fact S.C. remains in the care of a relative. The mother also contends termination of the child-parent relationship was not in S.C.'s best interests.

Reviewing the entire record anew, we reach the same conclusion as the juvenile court. The "plethora of services" received by the mother unfortunately has not been successful. Reunification is not a realistic possibility due to continued concerns about the mother's substance abuse, her unstable housing and employment, and her inability to provide the kind of interactions required for the healthy development of her special needs child. Accordingly, we affirm the termination order.

**I.     Background Facts and Proceedings**

This appeal involves the future of S.C., who was born two months prematurely in October 2011. She weighed just under three pounds at birth and spent several months on a ventilator at University Hospitals in Iowa City. As a result of her premature birth, S.C. has experienced significant developmental delays in both walking and talking.

Her family came to the attention of the Iowa Department of Human Services (DHS) in February 2013 when a report surfaced that the mother was abusing prescription drugs while caring for then sixteen-month-old S.C. The mother consented to a drug screen that tested positive for methamphetamine.

The DHS removed the child from the mother's care[1] in March 2013, and S.C. was adjudicated as a child in need of assistance (CINA) in May 2013. Over the next several months, the mother attended substance abuse treatment and twice-weekly visits with S.C., though the Family Safety Risk and Permanency (FSRP) providers were concerned about the mother's ability to care for the child because she "appeared unable to care for her own needs independently."

In September 2013, the mother received a psychological evaluation, showing she had borderline intellectual functioning. The evaluation noted her previous diagnoses for attention deficit hyperactivity disorder, bipolar disorder, posttraumatic stress disorder, and a "severe learning disorder." The mother had dropped out of school after the eighth grade and did not pursue a GED. The evaluation also discussed her "poor judgment, impulsive behavior, and history of substance abuse."

The DHS reunified S.C. with her mother in October 2013 when the mother entered Hope House, a residential substance abuse treatment facility. The mother and child successfully completed a fourteen-week parenting class called Strengthening Families in the fall of 2013, and completed a sixteen-week program called Celebrating Families, focused on families recovering from substance abuse, in the spring of 2014.[2] But unfortunately the mother's reunion with S.C. was relatively short-lived. The DHS removed S.C. again in May 2014

[1] S.C.'s father, Albert, was incarcerated in Missouri when she was born, and he had little contact with her over time. The juvenile court also terminated Albert's parental rights, but he did not appeal.

[2] The mother participated in family treatment court beginning in April 2013. But according to the FSRP worker's testimony at the termination hearing, the mother was asked to leave family treatment court when she had several relapses.

following the mother's relapse on prescription painkillers. The mother also admitted that while she was under the influence of drugs she slapped S.C. and pulled out a chunk of the child's hair. From that point in time, S.C. never returned to her mother's care.

During the summer of 2014, the mother's visits with S.C. did not go well. The mother did not play with the child or talk extensively with her, though physical interaction and verbal stimulation were both important remedies to S.C.'s delayed development. The mother also yelled at the child as a form of discipline. The mother gained insight into how to better engage with S.C. by participating in Parent-Child Interactive Therapy (PCIT) from November 2014 through February 2015. But when the mother stopped the PCIT therapy, the visits reverted back to basics, where the FSRP workers would have to coach the mother even to provide food or drink for the child. The worker testified her parenting has "slowly gone backwards."

In July 2014, the mother announced her engagement to Jeremy, who was in jail in Missouri on theft charges and who admitted a history of substance abuse. In October 2014, the mother revealed she was pregnant and believed Jeremy to be the baby's father. The mother gave birth to a son, C.C., in March 2015.[3] Because that baby was also born prematurely, the parents spent several weeks at the Ronald McDonald House in Iowa City while C.C. remained in the neo-natal care unit of University Hospitals. The mother reported receiving substance abuse treatment at the hospital's chemical dependency unit during

---

[3] That child is not the subject of this appeal.

that time. The hospital program recommended the mother complete an extended outpatient program, but the mother did not follow up.

The State filed a petition to terminate parental rights on May 18, 2015. The termination hearing occurred on August 18 and September 4, 2015.

The hearing evidence revealed that the mother did not have stable housing. She was evicted from her apartment in April 2015, and lived at five different locations until moving into a house with a man she had met one month earlier during her employment at Chills N' Thrills, an Ottumwa strip club. The mother also did not have stable employment. She quit the job at the strip club because "it was not a good environment," but she then took employment at a similar establishment in Fort Madison. She also started a job stocking shelves overnight at Hy-Vee in September 2015. She was late to the second day of the termination hearing because she overslept.

The juvenile court issued its order terminating parental rights on October 30, 2015. The mother now appeals.

## II.    Standard of Review

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We uphold the termination of parental rights where there is clear and convincing evidence of the statutory grounds for termination. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

**III.    Analysis**

The decision to terminate parental rights under chapter 232 must follow a three-step analysis.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  First, the juvenile court must decide if the State has established a ground for termination under Iowa Code section 232.116(1) (2013).  *Id.*  Second, if the State has established a statutory ground, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination serves the child's best interests.  *Id.*  Third, if the statutory best-interests framework supports termination, the court must consider any factors in section 232.116(3) that may tip the scales away from termination of parental rights.  *Id.*

**A.  Iowa Code section 232.116(1)(h)**

We start with the statutory ground.  The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(h).  That subsection requires the State to prove the child (1) is three years old or younger,[4] (2) has been adjudicated as a CINA, (3) has been removed from the parent's care for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days, and (4) cannot be returned to the parent's custody as provided in section 232.102 at the present time.  Iowa Code § 232.116(1)(h).

The mother concedes the first three elements, but challenges the court's finding that S.C. could not be returned to her care at the time of the termination

---

[4] The child's age is determined upon the date of completion of the termination hearings. *In re N.N.*, 692 N.W.2d 51, 53 (Iowa Ct. App. 2004).  We recognize C.S. was beyond her third birthday during the termination hearings.  Nonetheless, Iowa Code section 232.116(1)(h) is applicable to a child who is three but not yet four.  *Id.* at 53–54.

hearing. The mother asserts she had found employment, housing, and remained willing to engage in services to achieve reunification.

Upon our de novo review, we conclude the State offered clear and convincing evidence S.C. could not be safely returned to her mother's care at the time of the termination hearing. The mother's assertions regarding her readiness to parent were countered by the FSRP worker's testimony. The worker voiced concerns about the mother's ability to resume custody of the child, based on "her history of repeated relapses using prescription and non-prescription drugs, inconsistent parenting, unstable housing, [the mother's] inability to understand her own intellectual disability, and her unrealistic expectations for [S.C.]."

The mother's living arrangements and work prospects were sketchy. She bounced from residence to residence after C.C. was born, and just before the termination hearing, she moved into a house with a recent acquaintance she made while working at a strip club in Ottumwa. The FSRP worker testified this home would not be appropriate for the child. The mother also changed jobs frequently, starting new, part-time employment just at the time of the termination hearing. The record established the mother's receipt of numerous services across more than two years has not enabled her to successfully attend to S.C.'s developmental needs. We agree with the juvenile court's decision to terminate the mother's parental rights based on section 232.116(1)(h).

## B. Iowa Code section 232.116(2)

After deciding a statutory ground for termination exists, we must still determine whether termination is in the child's best interests. *A.M.*, 843 N.W.2d at 112. We give primary consideration to the child's safety, to the best placement

for furthering her long-term nurturing and growth and her physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2); *accord In re P.L.,* 778 N.W.2d at 41 (reiterating the courts will not deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) "by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child").

The mother argues reunification is in S.C.'s best interest because the mother "has addressed the concerns that gave rise to adjudication." As we noted in the previous section, the record does not support the mother's assertion that she has adequately addressed her substance abuse, housing, and employment issues.

As the juvenile court opined: "It is clear the child needs permanency." After the second removal, the child has been out of the mother's care since May 2014. The mother has not shown an ability to further S.C.'s long-term nurturing and growth during the visits. We agree with the juvenile court's assessment that although S.C. has some special needs, "she would not be difficult to place for adoption if parental rights are terminated." We do not believe waiting for the mother to achieve stability would be in the child's best interests.

### C. Iowa Code section 232.116(3)

Finally, the mother contends termination was "unnecessary and overly harsh when the child is placed with a relative." *See* Iowa Code § 232.116(3)(a) (allowing juvenile court not to terminate when "relative has legal custody of the child"); *see A.M.,* 843 N.W.2d at 113 (suggesting placement by the DHS into

grandparents' care was not "legal custody"). S.C. is currently placed with her maternal aunt.

The mother believes the juvenile court should have denied the termination petition and placed S.C. in a guardianship under section 232.104(2)(d)(1). The juvenile court noted that given S.C.'s age and the mother's history of participation in services, a long-term guardianship was not appropriate. Our case law also holds guardianship is not legally preferable to termination followed by adoption. *See In re L.M.F.*, 490 N.W.2d 66, 67–68 (Iowa Ct. App. 1992). Nor should an appropriate decision to terminate the mother's parental rights "be countermanded by the ability and willingness of a family relative to take the child." *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). We are not persuaded that S.C.'s placement with her aunt was a factor weighing against termination of the mother's rights.

**AFFIRMED.**