# IN THE COURT OF APPEALS OF IOWA

No. 19-0205
Filed June 5, 2019

**IN THE INTEREST OF A.W., Z.H., Z.W., and Z.W.,**
**Minor Children,**

**D.H., Mother,**
     Appellant,

**A.W., Minor Child,**
     Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

A mother and a child appeals the termination of the mother's parental rights.

**AFFIRMED ON BOTH APPEALS.**

Jamie L. Schroeder of The Sayer Law Group, P.C., Waterloo, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Melissa A. Anderson-Seeber of Juvenile Public Defender's, Waterloo, attorney and guardian ad litem for minor children Z.H, Z.W., and Z.W. and attorney for A.W.

Heather Feldkamp of Feldkamp Law Office, Waterloo, guardian ad litem for minor child A.W.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to four of her seven children, born in 2006, 2012, 2014, and 2017. She contends (1) the State failed to prove the grounds for termination cited by the district court; (2) the district court should have granted her additional time to work towards reunification; (3) termination is not in the children's best interests; and (4) the district court should have placed the oldest child in a guardianship with the child's maternal grandmother. The oldest child also appeals the termination decision. She argues the court should not have terminated her mother's parental rights and should have placed her in a guardianship with her maternal grandmother.

## I.    Mother's Appeal

### A.    Grounds for Termination

The district court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(e), (f), and (h) (2018). We may affirm if we find clear and convincing evidence to support any of the grounds cited by the court. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). We elect to focus on subsections (f) and (h), which are identical but for the ages of the children and the time the children must have been removed from the parent's care. Iowa Code § 232.116(1)(f), (h). Subsection (f) requires proof the child is four or older. *Id.* § 232.116(1)(f)(1). Subsection (h) requires proof the child is three or younger. *Id.* § 232.116(1)(h)(1). The court terminated the mother's parental rights to the oldest child under subsection (f) and the remaining three children under subsection (h). Both subsections require proof the child cannot be returned to the parent's custody. *Id.* § 232.116(1)(f)(4), (h)(4).

We begin with the children's ages. The oldest child clearly fell within the age parameters of subsection (f) and the youngest two children clearly fell within the parameters of subsection (h). The third child was three when the termination petition was filed but turned four several days before the termination hearing. The district court noted that the child was four but invoked section 232.116(1)(h) rather than (f) to terminate the mother's parental rights to him.

Age is determined at the time of the termination hearing. *See In re N.N.*, 692 N.W.2d 51, 53 (Iowa Ct. App. 2004) (examining ages "at the time of the termination hearing"). Under similar circumstances, we entered a limited remand order to allow the State to plead the correct age provision. *See In re M.T.*, 613 N.W.2d 690, 693 (Iowa Ct. App. 2000). Here, we need not employ the same procedure because the State pled both age provisions and the district court found the child was three but turned four. In effect, the court terminated the mother's parental rights to the third child under subsection (f) rather than (h). *See id.*

We turn to the critical question—whether the children could be returned to the mother's custody. *See* Iowa Code § 232.116(1)(f)(4), (h)(4). Our de novo review of the record reveals the following facts.

The father of two of the mother's seven children was charged with and apparently convicted of domestically abusing the mother after his children saw him punch the mother in her face several times. The district court issued a criminal no-contact order, which required him to stay away from the mother until 2022. The mother allowed the father to babysit five of her children while she was at work. The father punched one of the children in the chest, resulting in the child's death.

Another child was diagnosed with multiple bruising. The father was arrested for first-degree murder and child endangerment.

Following the child's death, the department of human services intervened and developed a safety plan under which the mother was not to have any unsupervised contact with her children. The children's maternal grandmother was designated the supervising contact. Almost immediately, the mother violated the plan by taking two of the children out alone. The department sought and obtained an order to have the four children in her care temporarily removed from her custody. The mother agreed to the children's continued removal and stipulated to their adjudication as children in need of assistance. The children remained out of the mother's custody throughout the proceedings.

Although the mother engaged in therapy and other services, the district court found her progress insufficient and recommended the filing of a termination petition. The State filed a petition seeking termination of the mother's parental rights and the parental rights of the fathers.[1]

At the termination hearing, the department social worker managing the case testified to the mother's serial relationships with men who physically abused her or who had a history of aggressive and violent behavior. Shortly after her child died at the hands of one of the fathers, the mother began a relationship with a man who, according to the social worker, "had domestic assault charges that included a no-contact order against a woman and children" as well as "robbery-second charges." Although the social worker did not testify to the disposition of the charges and

---

[1] The fathers had little involvement with the children and did not appeal the termination of their parental rights to the children.

conceded there were no abuse findings of abuse perpetrated against this mother, she stated, "[W]ho [the mother] associate[s] with has a direct impact on [the mother's] safety and the safety of her children. And [the mother] really struggled with accepting that as a concern."

The mother also began another relationship with a man who "had a domestic-assault charge." The relationship was short-lived but resulted in a pregnancy and the birth of the mother's seventh child just before the termination hearing.

On our de novo review, we conclude the mother was not in a position to have the four children returned to her custody at the time of the termination hearing. We affirm the statutory grounds for termination of her parental rights to the older two children pursuant to Iowa Code section 232.116(1)(f) and the younger two children pursuant to Iowa Code section 232.116(1)(h).

### B. Additional Time

The mother seeks additional time to correct the situation. *See id.* §§ 232.104(2)(b); 232.117(5). She notes that she was working with her therapist "for approximately eleven months" and met with the oldest child's therapist to "better understand" that child's trauma.

The mother's efforts to obtain help were commendable. But, despite sixteen months of services, she did not internalize the safety concerns posed by her relationships with violent men. As the department social worker testified, "I don't believe that she has gained the insight on how her choices impact her safety let alone the safety of her children."

The child's therapist seconded the social worker's opinion. While conceding the child "loves her mom" and "want[s] to go home," she expressed "concerns that we have not made enough progress with [the mother] being able to address or support [the child's] needs, that [the child] would not be able to feel safe, that she would be safe, or that she would be able to ask [the mother] to keep her safe." She further testified, "Due to [the child's] significant trauma history, she would benefit from a caregiver who is very self-aware and self-controlled about their own reactions to trauma." The mother had yet to reach that stage. Accordingly, we conclude termination of her parental rights is the appropriate remedy.

### C.    Best Interests

Termination also must serve the children's best interests. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). The children's safety is the paramount consideration. *Id.* As discussed, the children's safety was significantly compromised at the time of removal, and the mother did not make sufficient progress to alleviate concerns about future harm by the men in her life.

### D.    Guardianship

We are left with the question of whether the court should have granted the maternal grandmother guardianship over the oldest child. We will address that question in connection with the child's appeal.

## II.    Child's Appeal – Best Interests/Guardianship

The oldest child contends termination of the mother's parental rights is not in her best interests and the district court should have ordered a guardianship with her maternal grandmother. She cites the fact that, in the sixteen months following

her removal, she was placed in five different foster homes and the fifth home was only a temporary placement.

The multiple placements give us pause. But, despite the many moves, the child made progress in dealing with her traumatic past.

The child's progress had much to do with the fact that the fifth foster parent was herself a therapist. Had she served as a pre-adoptive placement, there is no question the children's best interests would have been served by remaining in her care. *See In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) ("When a court terminates parental rights, there is no statutory preference for placement with a relative.").

As it stood, the child was slated to move a sixth time. The question then becomes why not have her move to the home of a relative who is willing to care for her and had guardianship over the child's cousin.

While this option is facially appealing, it was not feasible because the child's mother was living with the maternal grandmother at the time of the termination hearing. There was also a more fundamental issue—the reason behind the child's desire to return to her mother. The child informed a court appointed special advocate that she wished to live with her mother because she wanted to keep her mother safe. The district court characterized her statement as "a perplexing turnabout of roles," a statement with which we agree. At the end of the day, the child's concerns about her mother's safety speak volumes about her own safety in her mother's care. Notwithstanding the child's heartfelt desire to return to her mother's custody, we conclude termination is in the child's best interests and a guardianship with her maternal grandmother is not warranted.

We affirm the termination of the mother's parental rights to four of her children.

**AFFIRMED ON BOTH APPEALS.**