**In the Interest of E.J.R. and F.J.R.S. Children.**

No. 86–429.

Supreme Court of Iowa.

Feb. 18, 1987.

David R. Gault, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Valencia Voyd McCown, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, SCHULTZ, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

This appeal by a father (Emmanuel) challenges a juvenile court order terminating his parental relationship with his children E.J.R. and F.J.R.S. Emmanuel contests (1) the admissibility of hearsay evidence offered in support of the petition to terminate and (2) the sufficiency of the evidence as a whole to support the trial court's conclusion that the children cannot be safely returned to his custody. Central to the resolution of both issues is the unanswered question of whether the hearsay exceptions of Iowa Code section 232.96 (1985) apply to a termination proceeding. We conclude that they do and affirm the trial court.

We have reviewed de novo the record made before the trial court. *In Re K.L.C.*, 372 N.W.2d 223, 227 (Iowa 1985). Before relating the factual basis underlying the court's decision, however, we deem it helpful to briefly review the statutory requirements governing this termination proceeding, focusing particularly on the evidentiary issue raised by appellant Emmanuel.

I. *Admissibility of hearsay evidence.*

We start with Iowa Code section 600A.3 (1985) which provides that termination of parental rights "shall be accomplished only according to the provisions of this chapter." Beginning with the premise that its provisions are to be construed broadly, the statute dictates that the welfare of the child shall be the "paramount consideration" with "due consideration" given the interests of the parents. § 600A.1. This statutory balancing of interests reflects traditional principles developed at common law in cases involving the custody of chil-

dren. Iowa R.App.P. 14(f)(15); *In Re J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984); *see generally Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

The statute then provides two distinct procedural paths for the resolution of disputed termination proceedings. If the affected child has already been the subject of child in need of assistance (CHINA) proceedings under division III of chapter 232, then section 600A.5 requires that "the termination proceedings shall be conducted pursuant to the provisions of chapter 232, division IV." All other termination hearings proceed in accordance with chapter 600A.

This procedural bisection becomes significant in the case before us because the standard for admissibility of evidence in the two types of cases appears statutorily inconsistent.

Section 600A.7(1) and (2) provide in pertinent part that

> [t]he hearing on termination of parental rights shall be conducted in accordance with the provisions of sections 232.-91 to 232.96.... Relevant information, including that contained in reports, studies or examinations and testified to by interested persons, may be admitted into evidence at the hearing and relied upon to the extent of its probative value.

Section 232.96, to which the foregoing section refers, allows introduction of documentary evidence including an audiotape or videotape recording "notwithstanding any objection to hearsay statements contained in it provided it is relevant and material and provided its probative value substantially outweighs the danger of unfair prejudice to the child's parent, guardian or custodian."

This statutory exception allowing the admission of certain hearsay evidence otherwise prohibited by Iowa Rule of Evidence 802 has no counterpart in division IV of chapter 232. Are we then to assume that the legislature intended that a more stringent standard for admissibility applies to those termination cases in which there has

been a prior adjudication finding the child in need of assistance? We think not.

Conceptually, the standards and rules applicable to terminations under one chapter should not differ from the provisions leading to the identical result in another chapter. See *In Re Chad*, 318 N.W.2d 213, 218 (Iowa 1982). Moreover, our prior decisions have consistently held that evidence meeting the test of relevancy and materiality required in a CHINA proceeding may be similarly admitted and relied upon in a termination proceeding to the extent of its probative value. *Harter v. State*, 260 Iowa 605, 608, 149 N.W.2d 827, 829 (1967); *In Re O'Neal*, 303 N.W.2d 414, 421 (Iowa 1981); *In Re Adkins*, 298 N.W.2d 273, 277 (Iowa 1980).

In *Adkins*, we concluded that CHINA and termination proceedings are not separate and distinct actions, but are interdependent and interwoven, the former often serving as a prelude to termination of a parent-child relationship. While *Adkins* focused primarily on a challenge to the judicial notice procedure utilized by the trial court in that case (a challenge not raised in this appeal), the principle underlying our decision applies here: these related statutes reveal a legislative scheme to provide for termination in the same court in which the CHINA adjudication has occurred, as a logical resolution to a child's "limbo" CHINA status. We found it illogical to "replay" the evidence introduced in the CHINA proceeding in a subsequent termination action, so long as certain procedural safeguards were followed. *Id.* at 277. Inherent in our decision was the recognition that evidence properly admissible in an adjudicatory proceeding should be accorded the same standard of admissibility in a subsequent hearing on termination pertaining to the same child. We see no reason to depart from that principle in our task of harmonizing the two statutes before us.

Finally, we conclude that this legislative scheme is consistent with the equitable nature of juvenile proceedings which are designed to retain the advan-

tages of informality while providing safeguards to guarantee each parties' fundamental right to a fair hearing. *Harter*, 260 Iowa at 616–17, 149 N.W.2d at 834. Thus, we hold that evidence admissible in chapter 600A terminations by virtue of section 232.-96(6) shall likewise be admissible in terminations brought in accordance with chapter 232, division IV, sections 232.109 through 232.118. The trial court was correct in admitting such evidence over Emmanuel's hearsay objections in this case.

## II. *Sufficiency of the evidence.*

■ Turning to the merits of the termination proceeding, our de novo review of the record leads us to reject appellant's contention that the trial court's findings and order were not supported by clear and convincing evidence. To the contrary, the overwhelming evidence before the trial court, both direct and circumstantial, points to the unmistakable conclusion that these children cannot be returned safely to the custody of their father.

Preliminarily, we note that the petition to terminate parental rights was brought in accordance with section 232.116(5) which allows termination on the following grounds:

a. The child has been adjudicated a child in need of assistance pursuant to section 232.96; and

b. The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least twelve of the last eighteen months; and

c. There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Section 232.102 refers to potential harm to a child resulting from a variety of circumstances listed in section 232.2(6). In this case, the State alleged imminent risk of abuse, physical and sexual, and the neglect resulting from Emmanuel's inability to supervise the children and his failure to provide them with adequate food, clothing and shelter.

Appellant concedes that conditions (a) and (b) of section 232.116(5) have been met. The children have been adjudicated in need of assistance and custody has been transferred from Emmanuel for more than twelve months. We therefore address solely the adequacy of the proof offered in support of the third necessary element. Because a detailed chronicle of the tumultuous lives of these young children would add nothing to our jurisprudence, we shall summarize only briefly the unfortunate circumstances which highlight Emmanuel's unfitness as a parent.

F.J.R.S., born November 8, 1976, and E.J.R., born October 10, 1978, are sister and brother born out of wedlock to a young woman named Rita. The children were removed from her custody in 1979 and placed in foster care following physical abuse requiring their hospitalization. Rita subsequently died of a drug overdose in June 1981. The children's father, appellant Emmanuel, displayed little interest in the children from their birth, despite his awareness of the abusive environment in which they lived. To his credit, however, he came forward upon Rita's death to assert his right to their custody. With provision for ongoing supervision by the Ohio court, the children were placed in Emmanuel's custody in September 1981. The Ohio Department of Social Services lost contact with the family in February 1982 and eventually closed their case in June 1983.

Meanwhile, the children came to the attention of Iowa authorities in July 1983. Their father's whereabouts was unknown and he had made no arrangements for their food or shelter. Mrs. Oakley, a friend of the children's great grandmother, had agreed to care for them temporarily after they were dropped off at her home in late June 1983 by a man named Mitchell. The children both reported that while in their father's care, their lives had been chaotic and violent and that they had lived primarily in a van or motels.

Emergency foster care was arranged. About six weeks after their initial abandonment, Emmanuel appeared on the scene but

conceded foster care placement was needed. A parenting contract drawn in September 1983 focused on the need for Emmanuel to establish a stable home for the children, provide for them financially through suitable employment and learn parenting skills necessary to provide consistent supervision and discipline.

Review hearings in June 1984 and October 1984 revealed little or no progress towards the goals established in October 1983. The children's CHINA status continued.

In December 1984, the foster mother observed the children engaged in overtly sexual behavior. Upon inquiry, E.J.R. revealed for the first time that he and his sister had been repeatedly sexually abused by Emmanuel while in his care. A child abuse investigation was instigated. After E.J.R.'s initial report of abuse, his behavior deteriorated markedly and F.J.R.S. became suicidal. The circumstances required removal of the children from foster care and placement in residential treatment centers. Both children seemed overwhelmed by the fear of their father's reaction to their revelations. Based on the childrens' ages, the consistency and spontaneity of their description of the abuse, E.J.R.'s persistently aggressive sexual behavior toward other children, and F.J.R.S.' depression and anxiety over her revelation, psychiatrist Donner Dowdney, therapist Kathy Cobb, child protective investigator Patty Burke and foster care specialist Pat Miller all opined that the reported abuse had in fact occurred. Visitation between Emmanuel and the children was thus suspended in February 1985.

Emmanuel has adamantly denied the allegations of sexual abuse and thus any rehabilitative measures proposed by the therapists working with the children have been to no avail. Furthermore, despite substantial expert testimony to the contrary, Emmanuel denies that the children are suffering from any emotional trauma requiring professional care or special parenting skills. In response to inquiries concerning his failure to provide financial support or establish a permanent home for the children over the past four years, he concedes that his restaurant business continues to "just break even." Nevertheless, he baldly asserts that if the children were returned to his care, finances would be "no problem" and "they [would] have a home in an hour."

The trial court was not convinced by this father's empty promises and neither are we. Emmanuel's expressed love for his children appears genuine, but his desultory performance as their caretaker and provider is undeniable. E.J.R. and F.J.R.S. have been in a parentless state of limbo for over three years. The time for relying on promises is long past; these children are in dire need of a permanent and stable home. The record supports by clear and convincing evidence the trial court's conclusion that the harm and consequences in continuing this parent-child relationship are greater than any consequences of termination. We agree.

AFFIRMED.