# IN THE COURT OF APPEALS OF IOWA

No. 16-1108
Filed August 31, 2016

**IN THE INTEREST OF J.M., K.H., and J.H.,**
**Minor Children,**

**C.H., Father,**
        Appellant,

**T.M., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Mills County, Gary K. Anderson, District Associate Judge.

A father and mother appeal separately from the order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Scott D. Strait, Council Bluffs, for appellant father.

Michael Donn Hooper, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Kristi A. Traynor, Assistant Attorney General, for appellee State.

DeShawne L. Bird-Sell of Sell Law, PLC, Glenwood, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A father and mother appeal separately from the juvenile court's order terminating their parental rights to their children: J.M., born in 2009; K.H., born in 2012; and J.H., born in 2014. Both parents argue (1) the State failed to prove the statutory grounds for termination by clear and convincing evidence, (2) termination is not in the children's best interests, (3) they share a bond with their children such that termination would be detrimental to the children, and (4) the court erred in admitting various exhibits at trial. Upon our de novo review, we affirm on both appeals.

## I.      Background Facts and Proceedings

The Iowa Department of Human Services (DHS) first became involved with the family in November 2012, after the parents brought twenty-three-day-old K.H. to a clinic after observing the newborn to be "raspy and gurgley" and suctioning blood from her mouth. The clinic doctor called 911, and the infant was transferred to a children's hospital. Hospital staff discovered K.H. had suffered bruising on her abdomen, forehead, and left knee; an injury to her hard palate; and a metaphyseal fracture to her lower-right leg. Neither parent could explain the newborn's leg fracture, and the bruise on her forehead was inconsistent with the parents' explanation. A doctor concluded the newborn's injuries were nonaccidental.

In January 2013, the juvenile court adjudicated K.H. and J.M. as children in need of assistance (CINA) under Iowa Code section 232.2(c)(2) (2011). The court placed the children with their maternal grandmother, who had served as a caregiver for J.M. prior to any DHS involvement. The court ordered the parents

to complete mental-health evaluations and participate in recommended individual therapy, medication management, and parenting-education services. In November, after determining the mother was in compliance with its order and no longer in a relationship with the father, the court returned the children to their mother's care. In June 2014, the juvenile court terminated jurisdiction in the CINA actions following district court orders establishing paternity, custody, and visitation.

In August 2014—two months after the court terminated the first CINA case—the mother brought the almost three-month-old J.H. to the emergency room with complaints the infant was not acting like herself—she was fussy, sleeping excessively, vomiting, and had a bulging soft spot on her head. Hospital staff discovered J.H. had suffered nonaccidental injuries including two separate subdural hematomas, a skull fracture, two separate rib fractures on her left side that were in different stages of healing, and bruising. Again, the parents had no explanation for the infant's injuries. Despite having been told she should not allow the father to spend time with the children unsupervised, the mother admitted to police the father stayed in the home three to four nights per week and provided care for the children while she was at work. When questioned, the father stated he did not live in the children's home but saw them on a daily basis. The court entered a temporary removal order and required that all interactions with the parents be supervised. The court also ordered the parents to participate in random drug screenings, complete a psychological evaluation and parenting assessment, and comply with all recommendations. In December 2014, the

juvenile court adjudicated all three children CINA under Iowa Code section 232.2(6)(c)(2) and (e) (2013).

In May 2015, the court entered a review modification order. The court noted the parents were facing several issues at the time that necessitated the continued removal of the children from the home. The court discussed the parents' current housing situation, noting the two-bedroom apartment they shared with the children's maternal grandmother could not accommodate all three adults plus three young children. The court found the parents were struggling with parenting their young children and noted that on several occasions the children had returned to the current foster home ill or with diarrhea and were exhibiting behavioral problems. Additionally, the court noted neither parent was employed, thus the family had no source of income. The court also noted both parents struggled with mental-health issues and the father continued to struggle with substance abuse.

In late July to mid-August, after moving into a rental home with adequate space for the children, the parents exercised a two-week home visit with the children. Following the visit, DHS concluded the parents had not shown enough positive change and continued to focus on themselves rather than their children. In August and November, the father tested positive for methamphetamine during scheduled tests with his probation officer. Consequently, the father's probation was revoked, and he was arrested after failing to appear for his court-ordered inpatient substance abuse treatment. The mother knew of the father's relapse but failed to report it. The court found the parents had been more consistent in

attending mental-health treatment; however, both parents were still unemployed and were allowing other individuals to stay in their home.

In September, the children's paternal grandmother reported the father had admitted to her he had caused J.H.'s injuries in August 2014 when he became angry that J.H. did not stop crying and threw the infant against a wall. The grandmother believed the children's mother had known what had happened to the infant and was covering for the father. The grandmother also reported the father had informed her K.H. had been injured in November 2012 when he and the mother were fighting over the baby—one parent holding onto the newborn's head and the other parent holding her feet—and the newborn fell to the floor. The father denied his mother's allegations.

In December, the court held a review modification and permanency hearing. In its written ruling, the court noted the parents were living in a four-bedroom home with adequate space for the children and had shown progress in their attendance in mental-health treatment. Additionally, the father had obtained full-time employment. However, the court found the issues and concerns that brought the family to the attention of DHS had not been resolved. The court noted the parents had agreed to plead guilty to child endangerment causing bodily injury for the injuries J.H. sustained in August 2014. The court acknowledged additional safety concerns remained: the father's relapse on methamphetamine, the mother's knowledge of the father's relapse and failure to report it to DHS, instability in the parents' home, and a lack of progress in parenting skills. The court also discussed DHS's concern the mother was overusing prescription medications and it was affecting her ability to provide care

for the children. The court noted the children had been out of their parents' care for most of their lives. DHS and the children's guardian ad litem both recommended termination of the father's and mother's parental rights.

In February 2016, the State filed a petition to terminate the parents' parental rights. After a hearing in April 2016, the juvenile entered an order terminating their parental rights pursuant to Iowa Code section 232.116(1)(d), (f), (h), and (i) (2015). The father and mother separately appeal.

## II. Scope and Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the children. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis

"Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d at 219. First, we must determine whether the State established the statutory grounds for termination by clear and convincing evidence. *See* Iowa Code § 232.116(1); *In re M.W.*, 876 N.W.2d at 219. Second, if the State established statutory grounds for termination, we consider whether termination is in the children's best interests under section 232.116(2). *See In re M.W.*, 876 N.W.2d at 219–20. Finally, we consider whether any exceptions under section 232.116(3) weigh against termination. *See id.* at 220.

### A. Statutory Grounds

The juvenile court terminated the parents' parental rights under Iowa Code section 232.116(1)(d) and (i) with respect to all three of the children, paragraph (f) as to J.M., and paragraph (h) as to K.H. and J.H. Both parents argue the State failed to prove the children could not be returned to the custody or care of the mother at the time of the termination hearing. The parents also contend the State failed to make reasonable efforts toward reunifying them with their children.

When a court terminates parental rights on more than one ground, we may affirm the order on any of the statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Evidence is clear and convincing "when there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *In re M.W.*, 876 N.W.2d at 219 (alteration in original) (citation omitted).

Iowa Code section 232.116(1)(f) provides the court may terminate a parent's parental rights if the State proves by clear and convincing evidence the child (1) is four years of age or older; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least twelve of the last eighteen months, or the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing. Under section 232.116(1)(h), the court may terminate parental rights if the court finds the State has proved by clear and convincing evidence the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least six of the last twelve months, or the last

six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the custody of the parent at the time of the termination hearing.

The parents do not dispute the first three elements of paragraphs (f) and (h): at the time of the termination hearing, J.M. was over the age of four and K.H. and J.H. were age three or younger; all three children were adjudicated CINA in December 2014; and all children have been removed from the parents' physical custody since August 2014, with no trial periods at home greater than thirty days. Rather, both parents' arguments focus on the final element—whether the children could be returned to their custody at the time of the termination hearing.

The mother asserts the children could have been returned to her custody at the time of the hearing because she had appropriate housing, an income, and could provide for the children. The parents also contend the State failed to prove it offered reasonable reunification efforts to the parents as part of its proof the children could not be returned to the parents at the time of the termination hearing. Specifically, the parents assert DHS did not recommend, and the court did not order, the parents to complete mental-health evaluations or treatment until the review modification and permanency hearing in December 2015. The father also complains DHS did not raise concerns about his need for anger management until the termination hearing.

Iowa Code section 232.102(7) requires the State to make reasonable efforts to reunify the family as quickly as possible after children have been removed from their parents' care and custody. "[T]he reasonable-efforts requirement is not viewed as a strict substantive requirement of termination." *In*

*re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Instead, it impacts the State's burden of proving those elements of termination that require reasonable efforts. *Id.* "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id.* In determining whether reasonable efforts have been made, the court considers "[t]he type, duration, and intensity of services or support offered or provided to the child and the child's family." Iowa Code § 232.102(10)(a)(1).

The father concedes he was not available to parent the children at the time of the termination hearing due to his incarceration but contends the children could have been returned to the custody of the mother, and therefore, neither parent should have had their rights terminated. The father does not have standing to contest the termination of the mother's parental rights. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (determining a father did not have standing to raise arguments on the mother's behalf in an effort to obtain a reversal of the termination of his parental rights); *see also In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (holding one parent cannot argue facts or legal positions pertaining to the other parent).

The record indicates the mother resumed counseling in August 2014 with the same therapist she worked with during the first CINA matter that was closed two months before. The record also shows the mother and father were both required to complete a psychological evaluation and parenting assessment and comply with any resulting recommendations under the temporary removal order entered in August 2014. The parents completed evaluations in December 2014, and ongoing therapy and psychiatry services were recommended to them. DHS

repeatedly expressed concerns surrounding the parents' mental health and encouraged them to continue participating in mental-health treatment. The State made reasonable efforts toward reunification.

The mother pled guilty to felony child endangerment resulting in bodily injury for the severe injuries J.H. suffered in August 2014. The mother refuses to take responsibility for her role in the matter, even arguing on appeal the State merely "speculates and has suspicions" that the parents physically abused the children but asserts the "the allegations . . . [are] without support." Moreover, after over three years of services, the mother has continued to struggle with mental-health issues and being able to parent her children. She was unable to remember her children's medical appointments or conversations with medical providers about necessary care for the children. She covered for the father when he continued to abuse methamphetamine and allowed him to provide care for the children. Throughout both CINA cases, there were concerns surrounding the parents' on-again and off-again relationship and their decision to repeatedly lie about their relationship. "Insight for the determination of the child[ren]'s long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re C.B.*, 611 N.W.2d at 495 (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)).

On our de novo review of the record, we find the State proved by clear and convincing evidence the children could not be returned to the custody of either parent at the time of the termination hearing. We affirm the termination of

the parents' parental rights under section 232.116(1)(f) as to J.M. and (h) as to K.H. and J.H.

### B. Best Interests

The parents next contend termination is not in the children's best interests under Iowa Code section 232.116(2). Even if a statutory ground for termination is met under section 232.116(1), a decision to terminate must still be in the best interests of the children under section 232.116(2). *In re M.W.*, 876 N.W.2d at 224. In considering whether to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

Two of the three children have suffered serious injuries while in their parents' care. The parents admitted to causing J.H.'s severe injuries when they pled guilty to felony child endangerment resulting in bodily injury. Neither parent has taken responsibility for their actions with respect to the child's injuries. The father struggled with substance-abuse issues throughout the case. The mother repeatedly lied to DHS about her relationship with the father, his drug use, and his unsupervised contact with the children. All three children have been out of their parents' care for the majority of their lives. "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (citation omitted). We find termination of the parents' parental rights to be in the children's best interests.

### C.    Permissive Factors

"Once we have established that the termination of parental rights is in the children's best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *In re M.W.*, 876 N.W.2d at 225. "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d at 113 (citation omitted).

Both parents argue they are bonded with their children and the State failed to present any evidence it was in the children's best interests to permanently sever the bond. *See* Iowa Code § 232.116(3)(c) (providing a court may decide not to terminate a parent's parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."). On our de novo review of the record, and for the reasons stated above, we do not find any permissive factors under section 232.116(3) exist that weigh against termination of the father's or mother's parental rights.

### D.    Exhibits

The parents next contend the juvenile court erred in the admission of a number of exhibits at trial. In particular, the father objected to those exhibits, and the mother joined in his objections, on grounds of hearsay and lack of foundation.

Our review reveals the exhibits in question—consisting primarily of the children's medical records, police reports, drug-screening results, the parents'

mental-health evaluations, records confirming the parents' participation in court-ordered services, and witness statements—are relevant to the termination proceedings as they relate to the safety and welfare of the children. *See* Iowa Code § 232.96(6) (allowing the admission of "[a] report, study, record, or other writing or an audiotape . . . recording made by [DHS], a juvenile court officer, a peace officer or a hospital . . . notwithstanding any objection to hearsay statements contained [with]in," if it is relevant and not unduly prejudicial); *In re E.J.R.,* 400 N.W.2d 531, 533 (Iowa 1987) (holding evidence admissible under section 232.96(6) to be admissible in termination-of-parental-rights proceedings); *see also In re A.J.*, 553 N.W.2d 909, 916 (Iowa Ct. App. 1996) (determining the court did not err in admitting reports compiled by a social worker because "[s]uch reports have previously been held to be admissible over hearsay objections."), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33 (Iowa 2010). Moreover, the evidence is cumulative because it had already been admitted in the CINA proceedings without objection, and the juvenile court took judicial notice of the CINA file at the termination hearing without objection. *See In re Adkins*, 298 N.W.2d 273, 278 (Iowa 1980) (permitting the juvenile court in a termination proceeding to take judicial notice of the evidence in the underlying CINA file). Accordingly, we find no abuse of discretion in their admission.

## IV. Conclusion

We have carefully reviewed the record, the briefs of the parties, and the juvenile court's thorough ruling. Upon our de novo review, we conclude the State proved the statutory grounds for termination of the father's and mother's parental rights by clear and convincing evidence and termination is in the children's best

interests. We further find no permissive factors weighing against termination exist so as to preclude termination. Finally, we find no abuse of discretion in the juvenile court's admission of a number of exhibits to which the parents objected. Accordingly, we affirm.

**AFFIRMED ON BOTH APPEALS.**