# IN THE COURT OF APPEALS OF IOWA

No. 17-1190
Filed October 25, 2017

**IN THE INTEREST OF B.H.,**
**Minor Child,**

**A.K., Mother,**
 Appellant,

**L.H., Father,**
 Appellant.

_____

Appeal from the Iowa District Court for Audubon County, Amy L. Zacharias, District Associate Judge.

A mother and father appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Karen K. Emerson Peters of Karen K. Emerson Peters Law Office, Atlantic, for appellant mother.

Scott D. Strait, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

William T. Early, Harlan, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**PER CURIAM.**

A mother and father appeal the termination of their parental rights. Upon our de novo review, we affirm on both appeals.

*I. Background Facts and Proceedings.*

B.H., born in 2008, is the daughter of A.K. and L.H. Both parents have a long history of mental-health issues and substance abuse. They both also have substantial criminal records.

In July 2015, B.H. came to the attention of the Iowa Department of Human Services (Department) after it was alleged the child was left unsupervised at the swimming pool. Specifically, while the child was swimming, the mother "went to her vehicle in the parking lot and smoked marijuana. [The mother] was reported to return to the pool area and passed out near the pool. When law enforcement approached her, [the mother] did not respond or awaken until the third attempt." The mother was charged with several criminal counts, and a child abuse investigation followed.

The Department learned the child had been living with her maternal grandmother for some time, and the child was formally removed from the parents' care and placed with the grandmother. The child had not had any contact with the father in several years. When asked by her therapist about her father, the child "recall[ed] very negative memories including, witnessing her father often being 'drunk' and his extreme physical abuse towards her mother. [The child] also remember[ed] the fear she had of her father during these situations as well." Notably, a no-contact order had been in place since February

2015 disallowing the father to have any contact with the grandmother due to threats he made.

The child was adjudicated a child in need of assistance (CINA) in September 2015, and services were offered to both parents for reunification. At the dispositional hearing in November 2015, the court directed the father to obtain mental-health and substance-abuse evaluations and to follow the evaluators' recommendations. The court also noted the continuing no-contact order between the father and the grandmother, and it advised the parties the Department should recommend interaction between the father and child when it was safe to do so.

At the end of December 2015, the State filed a motion requesting that an early CINA review hearing be held due to the father's serious threats against the grandmother, mother, and the Department's social worker assigned to the case. The State also requested the court set a hearing to show cause why the father should not be in contempt for violating the no-contact order and the court's order. Among other threats, the father on December 24, 2015, sent text messages to the social worker stating, "If things don't go my way today some people will have a tragic Christmas," and then "just kidding." Later that day, he sent the worker a text message stating, "You people have no idea what I am capable when it pertains to my kids," "I will show you [father's have] rights you witches," and "This is war." In its motion, the State also noted the father had not obtained the evaluations as directed by the court, and he did not show for the UA requested by the social worker. The State requested the court require the father to only have contact with the Department through his attorney. Then, in early January

2016, the father's appointed attorney asked that he be allowed to withdraw from representing the father and that new counsel be appointed based upon a breakdown in communication with the father. The court permitted the attorney to withdraw and new counsel was appointed. The court subsequently granted the State and Department's request that the father only have contact through his attorney "until [his] behavior settles down and he conducts himself in an appropriate, safe manner."

The father had a substance-abuse evaluation in April 2016, which was updated in October 2016. Among other things, the evaluator found the father to have a severe and dependent alcohol abuse disorder. Treatment and a psychiatric evaluation were recommended, but it was not clear if the father was going to follow up. The father's prognosis was considered poor because the father was in need of stabilizing his mental health, his substance abuse, and his housing situation. The evaluator also reported the father expressed homicidal ideations around the grandmother and others. A detailed safety plan was created, and the matter was staffed to determine if the father's statements were "enough information for a duty to warn call." It was decided there "was not enough concrete information" at that time.

The father did not immediately participate. However, in December 2016 the father began outpatient treatment and was on the waiting list for obtaining a bed for inpatient treatment. He also had a mental-health evaluation and requested help the day before the permanency review hearing. The psychiatrist reported the father stated he had "problems with anger in the past, focused towards [the mother] and her family over custody of [the child]." The father

"continually state[d] that [the mother] and her family are against him and trying to take his parental rights away," and stated he had "'done everything' that he was asked to do," though he had "no explanation of why there continue[d] to be issues." Although he had "a history of being angry and threatening behavior related to his case," the father did not "know why people think [he was] aggressive," stating he was not.

Following the permanency review hearing, the juvenile court directed that the State initiate termination-of-parental-rights proceedings. The court found that the child had been involved with the Department for fifteen months and neither parent had fully participated in the case. The court noted that although the mother was successfully discharged from a substance-abuse treatment program in April 2016, she was arrested for a probation violation and spent most of November 2016 incarcerated. At the time of the hearing, the mother was homeless and living out of state with her abusive boyfriend, and she had only sporadic visits with the child. The father still had not had any contact with the child because of his lack of progress. In January 2017, the State filed petitions seeking to terminate the parents' parental rights. A termination-of-parental-rights hearing was set for March 2017.

The father participated in services thereafter for a short time. He was successfully discharged from a short-term inpatient, substance-abuse treatment program at end of March 2017. Based upon the father's progress, the father requested he be permitted to have contact with the child. The court denied the request until such time as the child's therapist believed a visit was appropriate, noting the visit was not in the child's best interests at that time because of the

child's fears of the father and the passage of a large amount of time since contact. The termination-of-parental-rights and parental rights review hearing was moved to May 2017. In April 2017, the child was placed in foster care after the child's cousins—ages two and five—ingested methamphetamine at the grandmother's home and had to be life-flighted to a hospital.

However, the father's progress was short-lived. By May 2017, he was sending threatening emails to persons involved in the case, including threatening to kill his attorney and a service provider, as well as their children. At the set May termination-of-parental-rights hearing, his attorney asked to withdraw and new counsel be appointed the father. Based upon the severity of the threats, the court agreed the attorney should be allowed to withdraw, and new counsel was appointed and the termination-of-parental-rights hearing was continued to July 2017.

The termination-of-parental-rights hearing was heard as scheduled. Prior to presentation of evidence, the father's attorney requested the matter be continued because the father was in jail and could not be present for the hearing. The court denied the request, finding another continuance was not in the child's best interests and noting the parents' history of not appearing at the proceedings. After the hearing, the court terminated the parents' parental rights. Both parents appeal.

## II. Discussion.

The mother argues termination of her parental rights is not in the child's best interests. The father raises numerous issues, including lack of the provision of reasonable efforts, the child's best interests, and evidentiary challenges. Our

review of the termination of a parent's parental rights is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). However, "[e]videntiary rulings and rulings on motions are generally reviewed for abuse of discretion." *In re N.N.E.*, 752 N.W.2d 1, 6 (Iowa 2008).

Parental rights may be terminated under Iowa Code chapter 232 (2017) if the following three conditions are true: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights."[1] *In re M.W.*, 876 N.W.2d 212, 219-20 (Iowa 2016). However, prior to termination of a parent's parental rights, the State must make reasonable efforts "to make it possible for the child to safely return to the family's home." Iowa Code § 232.102(6)(b); *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). Where the juvenile court has found several statutory grounds for termination, "we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *D.W.*, 791 N.W.2d at 707.

### A. *Reasonable Efforts.*

Upon our de novo review of the record, there is no question that the father was provided reasonable services for reunification. He was zealously represented in the CINA and termination-of-parental-rights proceedings, and

---

[1] Because the parents do not challenge the juvenile court's finding that none of the exceptions in section 232.116(3) apply to preclude termination of their parental rights, we need not discuss that consideration. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

numerous services were offered to him by the Department. He even made progress at one point when he chose to participate, but it was short lived. The record shows it is the father's own decisions and threats that derailed reunification in this case. Reviewing the record anew, it is obvious the State met its section 232.102(6)(b) burden of making reasonable efforts for reunification for both parents.

### B. Evidentiary Rulings.

At the termination-of-parental-rights hearing, the father's newly appointed counsel objected to the admission of several exhibits for lack of foundation and inadmissible hearsay. The court sustained some of the objections but allowed the State to establish the other exhibits' admissibility during the hearing. By the end of the hearing, the court admitted over counsel's objections five exhibits—three current reports from service providers, one current report with the child's therapist, and the email sent by the father. Having reviewed the record de novo, we agree the exhibits were properly admitted.

"Iowa Code section 232.96(6) allows the admission of a report, study, record, or other writing made by the [Department], a juvenile court officer, or a peace officer, notwithstanding any objection to hearsay statements contained within, if it is relevant and not unduly prejudicial." *See In re N.N.*, 692 N.W.2d 51, 54 (Iowa Ct. App. 2004). Thus, Iowa's juvenile courts are generally "allowed to make use of hearsay and other evidence that would normally be excluded in our district courts." *In re A.M.*, 856 N.W.2d 365, 373 (Iowa 2014). This exception makes sense, since chapter 232 is to be construed liberally to "best serve the child's welfare." *See* Iowa Code § 232.1; *A.M.*, 856 N.W.2d at 373. Moreover,

the exception is applicable to termination-of-parental-rights proceedings under Iowa Code chapter 232.  *See In re E.J.R.*, 400 N.W.2d 531, 532-33 (Iowa 1987); *see also N.N.*, 692 N.W.2d at 54.

Here, the exhibits in question consist primarily of provider reports and concern not only the child and the child's well-being, but also the parents' progress in the case.  Though the reports were not made by government officials or peace officers, they are essentially ordinary business reports; these providers' reports have been routinely accepted since the case's inception in 2015 and have been consistent with the reports made by the Department, giving no reason to believe the newest reports were not truthful or accurate.  Importantly, as they relate to the safety and welfare of the child they are relevant to the termination proceedings.  The mother did not object to the exhibits, so the exhibits were admissible as to the mother.  The father had the opportunity to testify and challenge the information in the reports—little of which pertained to him—but did not.  Importantly, any threat of prejudice they pose to the father is low, as they are cumulative of other evidence in the record.  *See N.N.*, 692 N.W.2d at 54-55. Additionally, his attorney was present and able to zealously cross-examine the witnesses.  We find no abuse of discretion in the admission of these exhibits.

### C.  *Grounds for Termination and Best Interests.*

One of the grounds for termination found by the district court was section 232.116(1)(f), which, among other elements, requires the State to prove by clear and convincing evidence that the child could not be returned to the parent's care at the time of the termination-of-parental-rights hearing.  To satisfy its burden of proof, the State must establish "[t]he child cannot be protected from some harm

which would justify the adjudication of the child as a child in need of assistance." *See* Iowa Code § 232.102(5)(2); *see also In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). "The threat of probable harm will justify termination, and the perceived harm need not be the one that supported the child's initial removal from the home." *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "At the present time" refers to the time of the termination hearing. *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). In this case, the underlying basis for the child's CINA adjudication was the mother's mental-health and substance-abuse issues; the father had not been in contact for a few years. Once he was advised of the case and was in contact, his mental-health and substance-abuse issues became apparent. Neither parent could care for his or herself, let alone the child. Two years passed, and neither parent had corrected the concerns leading to the child's removal. Both parents were believed to be homeless at the time of the termination-of-parental-rights hearing, though the father was incarcerated based upon his contempt-of-court charges. Consequently, the State proved by clear and convincing evidence the child could not be safely returned to either parent, satisfying the ground for termination found in 232.116(1)(f).

For these same reasons, we agree with the juvenile court's finding that termination of the parents' parental rights was in the child's best interests. Even excluding the most-recent objected-to reports, the record shows this child has had a very difficult time—bedwetting had continued to be an issue. The child continued to express fear of the father based upon incidents she witnessed occurring between the parents. Moreover, the child has been removed since 2015. The parents have had adequate time to address their issues and put the

child's needs first. The record establishes the parents have made their choice. Ultimately, we agree that the State established that termination of the parents' parental rights was in the child's best interests.

The mother requests she be given an additional three to six months to show she can successfully parent the child. Children need a permanent home. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. At some point, the rights and needs of the child must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). For this child, that time is now.

### III. Conclusion.

Upon our de novo review, we affirm the juvenile court's order terminating both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**