# IN THE COURT OF APPEALS OF IOWA

No. 18-2217
Filed March 20, 2019

**IN THE INTEREST OF T.W. and J.W.,**
**Minor Children,**

**S.B., Mother,**
 Appellant,

**J.W., Father,**
 Appellant.
_____

Appeal from the Iowa District Court for Linn County, Susan F. Flaherty, Associate Juvenile Judge.

A mother and a father separately appeal from the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Jeannine L. Roberts, Cedar Rapids, for appellant mother.

Mark D. Fisher of Nidey Erdahl Fisher Pilkington & Meier, PLC, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, for Kathryn K. Lang, Assistant Attorney General, for appellee State.

Kimberly A. Opatz of Linn County Advocate, Cedar Rapids, guardian ad litem for minor children.

Considered by Potterfield, P.J., Tabor, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**GAMBLE, Senior Judge.**

A father and a mother separately appeal from the termination of their parental rights to T.W., born in February 2013, and J.W., born in February 2015 one-and-a-half months prematurely. In a well-documented and detailed order, including findings that the father and mother lacked credibility, the juvenile court terminated parental rights pursuant to Iowa Code section 232.116(1)(f) (2018) (as to T.W.), (g) (as to both children), and (h) (as to J.W.).[1]

On appeal, the mother argues the State failed to make reasonable efforts to reunify her with her children. She acknowledges a long struggle with sobriety but asserts she should be granted an additional six months in light of her ninety-day sobriety and recent re-engagement with services. The father contends the children could be returned to his care at present and that termination is not in the children's best interests. He also argues the court erred in considering anonymous hearsay statements made to an investigator and in denying him a new trial.

On our de novo review, *see In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018), we find clear and convincing evidence supports termination of both parents' rights,

---

[1] Under subparagraphs "f" and "h," a court may terminate parental rights if a child of an enumerated age has been adjudicated a child in need of assistance (CINA), has been out of parental custody for the requisite statutory period, and there is clear and convincing evidence that the child cannot be returned to the parent at the present time. Iowa Code § 232.116(1)(f)(4), .116(1)(h)(4).

Under subparagraph "g," the court may terminate parental rights if a child has been adjudicated CINA, "[t]he court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family," "[t]here is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation," and "[t]here is clear and convincing evidence that an additional period of rehabilitation would not correct the situation." *Id.* § 232.116(1)(g).

and termination and adoption will best provide the children with much needed permanence. We therefore affirm.

We will not reiterate the lengthy history of these proceedings—the juvenile court has done so. Suffice it to say, the mother has a lengthy criminal history; has been diagnosed with bipolar, anxiety, and attention-deficit disorders; and has a significant history of substance abuse. She has had nine children, none of whom are in her care. She has been involved with the department of human services (DHS) for many years. The father has seven children, none of whom are in his care. He has a lengthy history of domestic violence—involving the mother and other partners. He, too, has been known to DHS for many years. Numerous child-abuse assessments involve these two parents.

The mother and father have had four children together. Their rights to two older children were terminated in January 2012 due to the mother not following through with substance-abuse treatment, the father's untreated anger issues, and dishonesty by both parents impeding the service provider's efforts.

The parents' third child, T.W., was adjudicated a CINA on April 10, 2013, and J.W. was adjudicated a CINA on June 26, 2015.

A trial home placement with the father began in April 2016. On January 31, 2017, it was reported to the juvenile court that the father was granted sole custody of both children by the district court exercising concurrent jurisdiction. The father had been living with the paternal grandmother but moved out and was living on his own with the children in a mobile home. It appeared the CINA proceedings were nearing closure.

Then, DHS received a report related to another ongoing client, Courtney, who reported she was living with the father. Her mail was being delivered to the father's address. Courtney was known to be a user of methamphetamine. At a review hearing, the court ordered T.W. and J.W. to undergo drug testing and both children tested positive for methamphetamine and cocaine. A July 2017 child-abuse assessment was founded as to Courtney being the person responsible for the presence of drugs in the children's systems. The father submitted a urine sample, which was negative for illegal substances. He refused to wear a sweat patch. The children were removed from the father's care on July 26, 2017. He was ordered to have no contact with Courtney. The children were placed in foster care and later in the care of the paternal grandmother.

The mother was in jail in July 2017 and remained in jail until March 2018. While in jail, she refused any visits with the children. Upon her release in March she sought to have visits resumed. She had not engaged in services with DHS for over a year.

After the July 2017 removal, the father's visits progressed to semi-supervised and, in November 2017, overnights. However, he then left the state in December to work in Florida. He did not return to Iowa or see the children until February 2018.[2] Despite insisting he had no relationship with Courtney, the father stated that he called Courtney for a ride upon his return to Iowa. Police stopped to check on a car pulled to the side of the road and found Courtney on the ground crying and the father standing outside the car yelling at her. Courtney was under

---

[2] The father returned to Iowa to attend his trial on pending charges of assault against two women.

the influence of methamphetamine and syringes were found in the vehicle. Courtney had a large sum of money on her, which she stated the father had wired her to pay the rent.

The children's hair was again tested in March 2018. J.W. tested positive for exposure to amphetamine, methamphetamine, and cocaine. T.W. tested positive for exposure to amphetamine, methamphetamine, cocaine, and cannabinoids.[3] T.W. also tested positive for ingestion of cocaine. The father was subsequently ordered to submit to drug testing. Urinalysis screens on March 19 and April 4 were negative. A sweat patch removed on April 4 was negative. However, sweat patches removed on April 18 and 30 were positive for methamphetamine. The April 30 patch was also positive for cocaine.

A termination-of-parental-rights trial was held on September 7 and 18 and October 8 and 9, 2018. The parties stipulated the first three elements for termination were satisfied under Iowa Code section 232.116(1)(f) (as to T.W.) and 232.116(1)(h) (as to J.W.). They also stipulated the parents had previously had their parental rights terminated with respect to two of these children's siblings, satisfying the first two elements of section 232.116(1)(g). The court noted both parents "used words and body language to express hostility at various points during the hearings." The State withdrew calling Courtney as a witness because the parents intimidated Courtney in the lobby of the courthouse in the presence of courthouse security deputies.

---

[3] The child's paternal grandmother was providing care for the children. Her paramour admitted he smoked marijuana around the children.

*Mother's appeal.* At trial, the mother was asked if the children could be returned to her at present and she replied, "Absolutely not." Thus, there is clear and convincing evidence supporting the termination of the mother's parental rights under section 232.116(1)(f) and (h). We reject her claim that the State has failed to make reasonable efforts toward reunification. Any short-term delays at reinstituting visitation upon her release from one of her jail stints is of minimal impact in light of the circumstances. Like the juvenile court, we find the DHS fulfilled its statutory duty to offer a reasonable array of services aimed at moving the family toward reunification. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

Nor do we find an additional extension of time here is warranted. We adopt the juvenile court's findings:

> The [numerous] offered services have not resulted in the level of sustained progress needed for [the mother] to be able to safely assume and maintain care of [the children]. [The mother] has been unable to demonstrate that she has made the changes necessary to safely assume care of her children. The court finds that further offer of services to assist in returning the children to their mother is more detrimental to the children and their need for permanency than termination of their mother's parental rights.

*Father's appeal.* The father maintains he does not use drugs and has no explanation for why he or the children tested positive. The father had an independent hair-sample test conducted in August 2018, which was negative for any illegal substances. We agree with the juvenile court that because the father was in charge of the timing of the August test, it is of little value. We also note the father had another independent test done earlier, the results of which he did not share with the court.

The father also objected to claims that he had a history of domestic violence, noting he had no domestic-violence criminal convictions on his record. He acknowledged, however, he was recently convicted of two counts of assault. Those charges were related to the father assaulting and injuring two women in a parking lot when the children were present with him.

The DHS social worker and case manager, Erica McAdoo, testified that the father's positive drug screens in 2018 were "a very big shock" because "there were no behavioral indicators that he had been using." She testified the father was consistently employed and had stable housing and "we didn't have any concerns." He had no history of substance abuse. However, she did express concern about the father's continued anger-control issues, noting the recent assault charges and the incident involving Courtney in the courthouse. McAdoo testified she could not recommend the children returned to him because:

> He has minimized his relationship with Courtney throughout this case. He has minimized the children testing positive for illegal substances and how that could happen. He doesn't communicate with myself, for sure. It depends on who the provider is if he is open and willing to speak with them. So there is still those concerns, and concerns of domestic violence, two positive patches with no explanation for how those happened.

McAdoo testified the children were five and three years of age; the case had been open for more than five years; and the same concerns remain, that is, "domestic violence, substance abuse, [and] the children being around unapproved people that were not appropriate for them to be around." She did not believe an additional period of services was warranted.

We find the children cannot be returned to the father at present due to unresolved anger-management issues and inability to provide the children with a safe environment. Again, we adopt the juvenile court's findings:

> [The father] has a history of domestic violence with multiple domestic partners. Although [the father] denies that this is the case, a review of the documents and prior findings by this court establish that his denial is not credible. There are multiple reports of child abuse with [the father] as the perpetrator which are founded based upon [the father]'s assaultive acts in the presence of children in his care and, most recently, for exposing his children to illegal substances. [The father] has been repeatedly dishonest with the [DHS], the service providers[,] and this court. His dishonesty makes it impossible to develop a reliable protective services plan which would allow the children to be safe in his care while he continues to address his issues.

We find no abuse of the juvenile court's discretion in allowing the investigator's testimony. *See In re N.N.E.*, 752 N.W.2d 1, 6 (Iowa 2008) ("Evidentiary rulings and rulings on motions are generally reviewed for abuse of discretion."). The court stated it would give the testimony the weight it deserved, and the court made no mention of it. *See also In re E.J.R.*, 400 N.W.2d 531, 533 (Iowa 1987) (noting hearsay is admissible in termination proceedings). Further, the hearsay testimony of the investigator was cumulative of other evidence, including the investigator's personal observations. We find no merit to the father's claim that his confrontation rights were violated. *See In re D.J.R.*, 454 N.W.2d 838, 846 (Iowa 1990) ("By its terms, the sixth amendment applies only to criminal cases.").

Finally, the father failed to preserve error concerning his appearance in handcuffs following an arrest during the trial. As the juvenile court noted, he did not object at the time, which denied the court an opportunity to address his

situation. *See Segura v. State*, 889 N.W.2d 215, 219 (Iowa 2017) (discussing the importance of objecting in a timely manner "to ensure that the opposing party and the district court are alerted to an issue at a time when corrective action can be taken or another alternative pursued" (citation omitted)). Further, we are not convinced his restricted ability to write notes during the trial deprived him of a fair trial.

The parents contend the children could be returned home with additional time and services under Iowa Code section 232.116(1)(g)(3). We disagree. These two children have been under the supervision of the juvenile court for most of their young lives. They deserve permanency and should not have to continue to wait longer for safe parenting. Termination of the mother's and the father's parental rights is in their best interests so that they can be adopted.

**AFFIRMED ON BOTH APPEALS.**