# IN THE COURT OF APPEALS OF IOWA

No. 23-0315
Filed August 9, 2023

**IN THE INTEREST OF L.H.,**
**Minor Child,**

**L.B., Mother,**
        Petitioner-Appellee,

**C.H., Father,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Boone County, James B. Malloy,

District Associate Judge.


        A father appeals the termination of his parental rights under Iowa Code

chapter 600A (2022).  **REVERSED.**


        Todd E. Babich and Sierra Meehan Strassberg of Babich Sarcone, PLLC,

Des Moines, for appellant.

        Alyssa A. Herbold of Alyssa A. Herbold, P.L.C., Cherokee, for appellee.

        Mark Olberding, Nevada, attorney and guardian ad litem for minor child.


        Considered by Bower, C.J., and Tabor and Greer, JJ.

**GREER, Judge.**

The father, C.H., appeals from the termination of his parental rights to L.H. under Iowa Code section 600A.8(3)(b) (2022).[1] He argues the child's mother, L.B., failed to prove by clear and convincing evidence that he had abandoned the child and that termination was in the child's best interests. He also argues the district court erred in relying on the guardian ad litem's (GAL) report when the GAL did not speak with the father or his family. Because we conclude the mother failed to prove the father abandoned the child, we reverse the termination order.

**I. Facts and Prior Proceedings.**

The father and mother were in a relationship in 2013 when the child was born, but never married. When the child was less than one year old, the Iowa Department of Health and Human Services became involved following an incident of domestic abuse; soon after, the parents entered a stipulation and agreement,

---

[1] This section reads:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b).

which the district court adopted, that gave them joint legal custody of the child, the mother physical care, the father visitation, and imposed on the father a $110 monthly child-support obligation. In 2014, the child was adjudicated a child in need of assistance (CINA);[2] at that time, the father faced criminal charges and tested positive for methamphetamine, amphetamines, and marijuana. At the termination trial, the mother testified that, while the father was living with her on and off and sporadic in his visitation due to his drug use, he would see the child at least once a month.

In 2014, the father pled guilty to various criminal charges in several counties, including child endangerment,[3] possession of methamphetamine, and vehicular homicide by driving while under the influence. He entered prison in 2015. When he was first incarcerated, the mother consistently took the child to visit him; but, around the end of 2017, as the mother and father's relationship strained and eventually severed entirely, the paternal grandparents began taking the child to see the father, typically twice a month. While incarcerated, the father also exercised a privilege that allowed phone calls to the child. Eventually, the mother moved away to start school full time, and the visits reduced to once a month until the father was released on parole in March 2020.

Upon his release, the father began exercising his visitation, mostly following the stipulated agreement, which included every other weekend, alternating holidays, and two weeks in the summer. But, in March and November 2021, the

---

[2] The CINA case closed while the father was incarcerated the first time.
[3] The child endangerment charge came after the father entered the mother's home and assaulted her while she was holding L.H.

father was in two separate car accidents while intoxicated; he pled guilty to operating while intoxicated in both cases, and his parole was revoked in January 2022.

Since the father's most recent incarceration, the mother has not filled out the necessary paperwork to allow for in-person visitation or video calls with the child. But the father has consistently called the child—the mother testified he typically called once a week,[4] though the calls had increased to twice a week since she petitioned for termination in July of 2022. Given the child's age, the calls are sometimes short. But, as the father testified, the calls allowed him to help the child practice her math and reading on the phone. On top of the phone contact, the father also sends letters and holiday cards. He testified, as did his mother, that his parents ensure the child has presents for special events paid for out of the father's bank account. Similarly, the paternal grandparents use the father's bank account to make his monthly child-support payments. Under this plan, he is current on his child-support obligation. The child also goes to visit the paternal grandparents about once a month, and she speaks to the father on the phone during these visits.

For her part, the mother has remarried, and the child is thriving in the care of her mother and the mother's husband. The GAL filed a report after speaking with the mother, her husband, and the child, noting the child is very bonded to her step-father, who she refers to as "Dad" and who she has asked to adopt her. For reasons unexplained, the GAL did not speak with the father, and instead focused

---

[4] The mother brought a calendar that highlighted each date the father called. The longest stretch of time the father went without calling was six weeks when he entered prison the second time; he explained that it was difficult to get privileges to make the calls.

on the father's criminal record and past substance-abuse concerns in his questioning during the trial and in his report to the court. Referencing the best interests of the child, the GAL recommended termination of the father's parental rights.[5]

The termination hearing was held on October 7 and December 15, 2022. The district court found the father had abandoned the child under Iowa Code section 600A.8(3)(b) and that termination was in the best interest of the child; it granted the mother's petition to terminate the father's parental rights. The father appeals.

## II. Analysis.

Our review of a private termination of parental rights under chapter 600A is de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "Private termination proceedings under Iowa Code chapter 600A are a two-step process." *Id.* The petitioning parent "must first prove by clear and convincing evidence the grounds for ordering termination of parental rights," and second, "must prove by clear and convincing evidence that termination is in the best interest of [the child]." *Id.* A court shall consider if the parent fulfills his or her financial obligations and demonstrates continued interest in the child, a genuine effort to communicate with

---

[5] We give little weight to the GAL report for two main reasons. First, the interview with the child also included the mother's husband, which potentially impacted any answers or reactions by the child noted in the report. Second, section 232.2, defining the role of a GAL in matters such as these, requires that the GAL shall interview each parent. *See* Iowa Code § 232.2(25); *see also In re E.J.R.*, 400 N.W.2d 531, 532 (Iowa 1987) ("Conceptually, the standards and rules applicable to terminations under one chapter should not differ from the provisions leading to the identical result in another chapter."); *accord In re P.B.*, No. 22-1467, 2023 WL 3092505, at *7 n.14 (Iowa Ct. App. Apr. 26, 2023) (Tabor, J., dissenting).

the child, and the establishment and maintenance of a place of importance in the child's life. *See* Iowa Code § 600A.1.

Addressing the first prong, the father argues the mother failed to prove he abandoned the child. The phrase "to abandon a minor child" is defined as "reject[ing] the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." *Id.* § 600A.2(20). Section 600A.8 lists several grounds which, if established by clear and convincing proof, "shall be, either separately or jointly, grounds for ordering termination of parental rights." *Id.* at § 600A.8. "The legislature's use of the word 'shall' imposes a duty on the trial court to recognize these grounds for termination if they are established by the evidence." *Klobnock v. Abbott*, 303 N.W.2d 149, 152 (Iowa 1981). The challenge here is finding what grounds were supported by clear and convincing proof.

One ground supporting termination and urged by the mother is that the father had not made reasonable financial contributions to the child's support, which is the threshold element of "substantial and continuous or repeated contact with the child." *See In re S.A.*, No. 17-0859, 2018 WL 1182889, at *2 (Iowa Ct. App. Mar. 7, 2018) (quoting Iowa Code § 600A.8(b)). The mother is correct that, even though the father is up-to-date on his child-support payments, "[r]easonable support for purposes of section 600A.8(3)(b) is not limited to court-ordered support." *In re T.K.*, No. 16-0029, 2016 WL 4384869, at *2 (Iowa Ct. App. Aug. 17, 2016) ("The father also did not contribute to the support of [the child] in a reasonable amount. The father was current on his ordered child-support payments

of ten dollars a month, but acknowledged in his testimony ten dollars a month is well below the amount needed to financially support a child. . . . Ten dollars a month does not constitute contribution of a reasonable amount to the support of [the child] as required by section 600A.8(3)(b) even if the father was not fully employed at all times during the child's life."). Under this record, the father was current on his child-support obligation of $110 per month and also bought gifts, school clothing, and supplies for the child. On the other hand, the mother provided no evidence as to what was necessary for the child's care or how the support paid was unreasonable. *See In re J.E.*, No. 15-0187, 2016 WL 2753774, at *6 (Iowa Ct. App. May 11, 2016) ("The parent petitioning for termination pursuant to section 600A.8(3)(b) has the burden to show the other parent has abandoned the child.").

Therefore, based on our de novo review of the record, we cannot say that the monthly $110 child-support contribution and the other voluntary payments are unreasonable given the father's means due to his incarceration. *See T.K.*, 2016 WL 4384869, at *2; *but see In re A.M.*, No. 02-1085, 2003 WL 21696957, at *2 (Iowa Ct. App. July 23, 2003) ("The general rule is that incarceration provides no excuse for the parent's failure to provide the comfort, guidance, and support owed by a parent to his children. . . . [C]ourts are notably unsympathetic toward self-created obstacles to supporting one's children."). And the true thrust of the mother's argument seems to be not that the support is insufficient, but that it is coming from the father's parents rather than him while he is incarcerated—an allegation she cannot substantiate and the paternal grandmother testified was not true. Therefore, based on our de novo review of the record, the father satisfied the requirement that he maintain "substantial and continuous or repeated contact with

the child as demonstrated by contribution toward support of the child of a reasonable amount, according to his means." *See S.A.*, 2018 WL 1182889, at *2.

Because the father met the threshold element of section 600A.8(3)(b) (economic contributions), we turn to the requirements for contact between the parent and child. Both the GAL and the mother argued that the father was an absent parent without a meaningful relationship with the child because of the father's addictive behavior and his incarceration. Following this theme, the trial court terminated the father's parental rights on the basis that the father "was not fully embodying his role as a parent." We approach that argument as one focused on abandonment because of lack of contact with the child under section 600A.8(3)(b)(1) and (2). So, we turn next to evidence of the father's contact with the child and any actions by him showing he rejected the duties inherent in the parent-child relationship. *See* Iowa Code § 600A.2(20) (defining "to abandon a minor child").

From January 2022 until the end of March 2022, the father had limited contact with the child because of his poor decisions that led to another stint of incarceration. But, it was not that he did not try. He requested the mother's consent to begin video conferencing and physical visits during this time frame. Even before his parole revocation, the father began working on mental-health issues that he felt stymied his previous ability to live a healthier lifestyle. Bolstering his claims of change, his correctional counselor at the prison testified the father was "seeking out the help," "[could] articulate what he thinks he needs," and was "willing to try things to better himself." Overall, she felt he "put a lot of key things in place" and "[knew] he ha[d] to be sober going forward."

We agree with the trial court that over the years, the father had little participation in the child's education, health care, or extracurricular activities, but that failure alone does not amount to abandonment under our case law. Pointing to another parenting challenge, the court expressed concern that over the past nine years, the father spent six of those years incarcerated or removed from the child. Still, we have not held or suggested "that termination is a necessary result of conviction of a crime and resulting imprisonment." *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993). Instead, on our de novo review, we look to see how the important facets of the parent-child relationship has been maintained, despite imprisonment. And, as far back as the termination petition, the mother acknowledged that the father has had regular communication with the child. This was mirrored by her testimony, where she stated that, depending on where she lived with the child and the father's incarceration status, he would either have in-person visitation or maintain contact with the child through phone calls or letters. Moreover, after his release from prison in March 2020 until February 2022 when his parole was revoked, the father exercised substantially all of his court-ordered visitation, including weekend visits, the scheduled summer visitation, and holidays. While the mother is right that for several years the father's incarceration has prevented physical visitation and a more active role, his regular communication with the child is sufficient to block a claim of abandonment as he is making more than a marginal effort to communicate with the child. *See* Iowa Code § 600A.2(20).

While the father has made choices that have kept him from playing a more active role in the child's life, he still made efforts to stay connected with the child. The mother has not shown clear and convincing evidence that he has abandoned

the child under Iowa Code section 600A.8(3)(b).  Because she has not met her burden on the statutory grounds for termination, we do not address the mother's best interests arguments or the father's other concerns.  We reverse the district court's termination of the father's parental rights.

**REVERSED.**